Good morning. It's a pleasure and a privilege to appear before Your Honors. Probably the last time I was before a panel was about 30 years ago. There were a few issues that I noted in the opening brief, which I didn't address adequately in a responding brief, but not to make excuses, but I was gravely ill in November and December and I have recovered. Mr. Deutsch, do you want to reserve some time for rebuttal? Sure. Do you want to reserve two minutes? Five minutes. Five minutes? Okay, we'll reserve five. Go ahead. The issue upon which the dismissal turned per Judge Anderson was that trusts are will substitutes, which is language we see in some of the unpublished cases that were cited both by the court and in the answering brief. Well, Marshall v. Marshall involved a trust, right? I didn't hear Your Honor. Marshall v. Marshall involved a trust. That wasn't the reason they said it wasn't covered, right? Right. Gunn-Klotz, I think, involved a trust. Most of the modern cases involve trust, do they not? I have trouble hearing you. I'm sorry. I'm sorry. Most of the modern cases involve trusts. I have to ask someone else what the judge said. I have trouble hearing certain things. Don't most of the cases, modern cases, involve trusts? All right. Yes. What I was trying to say is in Kibbe, cited by the appellee, or rather in Wyszkowski, part of the reason why they said that it was a will substitute was based on Oregon law. The reason that I don't think that trusts are will substitutes, for one thing, I never heard of an inter vivos will. Trusts can be made irrevocable. And, in fact, at the time that the complaint and the First Amendment complaint were filed, we were not aware that one of the trust amendments, we only had the last of the amendments, and the 2013 amendment was made irrevocable by its terms. Mr. Deutsch, let me ask you a question. Yes. There's a case now proceeding in state court, the probate court. Yes. Is that the same case that you wish to prosecute here? I say it is. The answering brief said there are differences, but yes. I drafted the complaint and the First Amendment complaint, and I saw that my able counsel, Vikram Brar, virtually copied the allegations. Maybe some of the prayers were different, but it was the same claim. So do you wish to pursue this case here? No. But I asked counsel to agree to dismiss, and the rules say that it can be done by agreement or by the court, and we didn't reach agreement. One of the reasons was he cited that he could still bring a writ from the judge's overruling of the demur. And I was going to suggest to the court, you know, we have a case of mootness or potential mootness once the time expires to file a writ, which is 60 days, although I don't know that that's from the order, from the minute order, because the order hasn't been filed. It's supposed to be drafted by Mr. Jow. And then the court could wait until then and find mootness. I think that's the case. But I don't understand why it would be moot. You could withdraw this case, obviously. I could dismiss. But I don't know why the case that exists now is moot as long as the State law case remains unresolved. I mean, all that's happened is that the demur has been overruled, but so it's going forward. But the fact that there are parallel cases doesn't make this one moot. Well, I agree with the underlying rule that if the State court has jurisdiction over the race, then the probate exception applies. That's one of the three bases in Marshall. But is that what was decided? Or what was decided was simply that you weren't ‑‑ it was a limitations period problem or something, wasn't it? I'm sorry. Was it a limitations problem? What was the problem? Yes. The demur was based on the 120 days. Right. So all the district court decided is that you weren't out of time. The court decided that we were entitled to toll the statute. Right. So the case is going forward. He didn't even say that he's going to adjudicate your issue or that you're not going to be dismissed on the merits or anything. Hold on, Mr. Deutsch. Why don't we help you out with ‑‑ I believe there's a ‑‑ No, it's not. It's certain frequencies. I hear you perfectly clearly. You don't want to try it out? No. If it helps you? No, I do hear you. Okay. Go ahead. Well, I would like you to try it out because I'm very frustrated by it. So please try it out. Okay. I think that I've never worn one before. And hopefully it will help. You never know. I've been sitting here for 24 years and no one has ever had this problem before. Sometimes I don't speak up, but I am speaking up. Okay, I give up. Thank you. All right. Let's see what happens. Well, let us know if that helps a little bit more. It does help a little bit. Okay. Very well. All right. It's not moot in the sense that the court ‑‑ well, it is moot in my opinion. All right. So you are essentially telling us that in your view we do not now have jurisdiction? No. Because I think that despite the mootness, the court has the power to resolve the case. Well, we don't have power to resolve a moot case. And we also don't have ‑‑ and if you are telling us that the third exception applies because the state, the race is now under the control of the district court, of the trial court within the third category of gunkales, as I was saying, then we don't have jurisdiction. If that's how you see it, that's fine. But I thought there were exceptions. That's what you've told us. And I thought there were exceptions to mootness in cases where there's an important issue that's likely to recur and the court needs to rule on it. Well, in that case, if, you know, if the third prong of that case applies, then the case is moot. And I would urge you to dismiss. But opposing counsel says not until the time for a writ passes. And I think that 60 days will either be May 12th or if it runs from the time of the order, then 60 days from the order. So leaving aside what's happened later, your complaint specifically asks for ‑‑ to invalidate the trust. No, only the last two amendments. Well, yes, the amendments to the trust. Yes. All right. So why ‑‑ I know that the judge viewed this as probating or annulling a will. But if we don't say that, why isn't this at least the administration of an estate? Because you're asking us to determine the validity of the trust. No. As it now stands. Yes, you are.  I'm not asking to determine the validity of the trust. I'm asking ‑‑ Well, the trust doesn't now exist, i.e., with the amendments. Right. I'm challenging the capacity of the trust or undue influence of fraud and so on. But if you invalidate the last version of it, aren't we administering the estate? Arguably, yes. But it's a trust estate. It's not ‑‑ yes. But if that's how you look at it, then the court could almost never take a case involving a trust. Well, no. I mean, Marshall v. Marshall is, you know, an example of how very narrow the probate exception is. But in that case, no one was asking for a direct order about the trust. They were asking for damage. As I understood it, it's very narrow. They were asking for damages against the people who supposedly made the trust adverse to the plaintiff for what they did, but they weren't asking directly to invalidate the trust. I see the distinction, but I thought ‑‑ I'm not a probate specialist. And, you know, Mr. Jarnall is. And when he first brought up the issue that ‑‑ as to which the probate exception did apply, we amended in order to remove that. He didn't move to dismiss on probate exception, but then he joined the court's OSC, which I call a sui sponte motion. Counsel, you wanted to save your last five minutes? Thank you. All right. Good morning, Your Honors. May it please the Court. Neil Jarnall appearing on behalf of Appellee's Robert Klein, trustee of the Antidote Trust, Alexander Leichter, Robert Leichter, and David Winkler. In this case, the Court is asked to apply the probate exception. But as the panelists pointed out, the word probate exception is not the issue. It's really the concept. And the concept is that settlors or testators create estate plans. They may use a will. They may use an inter vivo's trust. In my view, they create a sort of box, which are the internal affairs of either a probate estate or a trust estate. And that relationship between the settlor, the beneficiary, and the trustees, among each other, is reserved for the state court under the probate exception because the court going into that area is administration of an estate. Counsel, you want a district court, right? Correct. Okay. They're essentially conceding. Why not agree to send us back? They, or Mr. Deutsch, filed a late petition that I still believe is late in Los Angeles Superior Court with different causes of action and different operative facts and different legal theories. If Your Honor is- That's not the question. The question is whether, as a result of what he did, and I don't know if this is true, but he's willing to concede it, the race, R-E-S, is now before the Superior Court. And he takes the view, I don't know if it's right or not, that that means that the probate exception applies now. We referred to it earlier. And he's willing to dismiss the case on that basis, but you apparently are not willing to agree to that. The action in state court is a different action. He's alleged that certain instruments are actually irrevocable, and I still have remedies. But that's not the question, right? I mean, if the race is before, because this is the third category, right, which is a variety of primary exclusive jurisdiction as to whether there is in-rim jurisdiction now in the state court. I don't understand particularly why what's happened affects that. But he says it does, and he's willing to dismiss this case on that basis, because there is in-rim jurisdiction in the state court. I don't know whether that's a correct jurisdictional ruling or that one that we would adopt, but that's what his position is. And the fact that it's a different, that what he's asking for is different doesn't affect whether the rim, the race, is actually before the state court. I just think on a temporal basis that exception is where the state court has come in first in time and taken control of the race. Well, actually, my understanding of the Marshall case is that they say it doesn't really matter what the state court's doing because the state court doesn't govern federal jurisdiction. All that matters is whether the race is before the state court, not who's first and who's second. I just don't think that those, they're sort of a little bit antiquated concepts of jurisdiction over a race. Well, but that's what Marshall said. Marshall said that this is a variety of primary exclusive jurisdiction, which does depend on jurisdiction over the race. But I don't think, given that the Demer overruling is not yet final, I don't think that that determination has been made. We're not there yet where the judge has heard any real responsive fact-based pleadings from my side and hasn't made any issues or findings of fact. But he's willing to withdraw this case. If he loses that case, that's his problem. But he's now willing to withdraw this case. And I've said nothing to stop you from having dismissing the case, but I'm not agreeing to dismiss it. I have costs. You know, Mr. Deutsch started this in federal court. I had to make a motion. I'd rather be in two courts than one court because of the costs here, which are probably minimal. We're not talking about fees. We're talking about costs. Correct. But he started it here. I had to do an appeal. I had to pay for copies. If he wants to dismiss it, my client has rights to recover costs. So for, I don't know, $200, you're not willing to agree to this. And I don't think that, I don't want to mislead the panel or the court. He may, if he wants to, he may be risking his entire remedy. Why don't you, yes, he may be. That's correct. I don't want to, you know, I don't want to, I'm not his attorney on my side. I don't want to engage in some kind of jurisdictional game. All right, so why don't you talk about why isn't this, as Judge Menzoza suggested, whether it is probating or unknowing a will, at least, the administration of an estate. I think it is administration of an estate, Your Honor. Again, you can, you know, there's a lot of law review articles that view this as a labyrinthine exception. I think the concept is, again, there are certain core competencies of the state court, and that is dealing with the relationships of the settlor, the beneficiaries, and the trustees. An outside party wants to sue a trustee, of course the federal court has jurisdiction. Everybody's subject to federal court jurisdiction if the trustee makes a contract and breaches that contract. But vis-a-vis the relationship of the parties, a trustee, a beneficiary, and an heir who says I should get more from the trust or there was undue influence, now you are inside the administration of an estate. And that is something that is within, it's not just in the probate code. You know, Gonsalves made the point that just because these provisions are in a probate code, that doesn't mean the probate exception applies. These provisions are not only in the probate code, they are within the state law's core competency, and they've created, the California courts and the California legislature, detailed provisions in the probate code that says these are the standards for undue influence. These are, you know, the way that the cases, and these are the key factors to consider within undue influence, within capacity. So is the only difference between your position and Mr. Deutsch's position, you believe the probate exception applies for one reason, and he believes it applies now for another reason. Is that your only difference? I believe it could apply for both reasons, but it doesn't matter. But you, so you want us to affirm the dismissal of this case for lack of jurisdiction, which will then allow you to file a bill of costs, rather than agreeing to the dismissal. And if I'm successful in overturning the overruling of Demer, ends this matter once and for all. But that doesn't have anything to do with whether we have jurisdiction or not. I think it does. If your honors say you shouldn't have brought this case here, that affects Mr. Deutsch's decision to bring the case in federal court and allow his statute to lapse. The judge in the Los Angeles County Superior Court employed equitable tolling. Is your concern that if he voluntarily dismisses the case now, presumably without prejudice, he could then file another case in federal court? I don't, I would assume that he has to dismiss it with prejudice. If he dismisses it without prejudice, I assume he can come back. So I'm looking for a ruling from your honors saying this case. Would it be useful for us to have you guys talk to one of our mediators and see if we can just get from here to there, which is not very far, to get the case dismissed? They were very helpful in the past. So that offer is definitely taken and accepted. What exactly do you see is the difference between this case and Marshall v. Marshall? Well, again, Marshall v. Marshall was a person who essentially did not have standing. She wasn't an heir because she wasn't married. She wasn't a relative. She was this, you know, companion of the decedent, and she alleged that the children of the decedent interfered with her right to inherit. And that's a known tort in California, intentional interference with expected inheritance. But isn't that essentially what Mr. Deutsch is saying? Mr. Deutsch is different. He is the son of the decedent. So California law accords him. He has remedies at probate. If he were to, as Judge Mendoza said, if he wins and invalidates the 2015 and 2014 amendment, he's in the 2013 version. So he has what they call a remedy of probate. He does not need the interference claim. All he needs to do is invalidate certain instruments and get back to what he states is the settlor's intent in 2013. And Nicole Smith was not. She was never provided for. The reason she alleges she was not provided for is others interfered. But he does claim interference. In the state court action, that was actually affirmed on Demur that he does not have that intentional interference with expected inheritance claim because he has remedy at probate. That's the California court issue. You can't go both. If you have a document that you can get to at probate, you're not outside that sphere. You're within the settlor, beneficiary, and perhaps upset air at what happened. And you need to go and invalidate documents. You cannot allege interference. If you're a friend or some kind of nonrelative who has made a promise and others interfered, then you have that interference claim. That's why I think Marshall said, well, and Marshall was very careful and said, this is a tort action. This is not an administration of the state. This is a third party, essentially, saying I was wronged. I suffered a tort, like an accident or an assault, and I want a remedy. And the federal court said, okay, in that case, you're entitled to it. But other than that, as Your Honor pointed out and as Wisnowski pointed out, we start with the fact that Marshall dealt with a trust, and the court did not say right off the bat, well, we have a trust here. So that's not the probate exception. You're dealing with an inter vivos trust. You're always going to have jurisdiction in the federal courts because we only apply it to the annulling of a will or the actual probate of an estate. It's a broader exception, although narrow, which says we're not going to get involved, as a federal court, in the administration of an estate, what the California law calls the internal affairs of a trust in Probate Code Section 17200. That is, I believe and contend, outside the view of the federal court sitting in diversity jurisdiction. It can't go into and say, well, we want to reshuffle the benefits of this trust estate because of undue influence or lack of capacity. That is left to the state court, who's established a core competency in that area. And that's why the cases, I think the majority of them, although there's no binding authority, has said, listen, a trust is just a will substitute. Is there any case that says otherwise? I believe in other circuits. Yes. There has been an issue that trusts, they say, because the analysis, by creating a trust somehow, the settlor has removed the property. And do you think that there are circuit-level cases saying that? I believe so, yes. I think in the 3rd and 7th that said that that analysis, in one case, it involved a gift inter vivos. And so they said, well, therefore, the settlor has removed the property from any possible jurisdiction of the state court. We're welcome to come back in. And then another case said, well, inter vivos trusts said, and there is district court authority that says inter vivos trusts are different. I believe that's inaccurate. Settlors sit down, and they plan their estates, and they create this set of relationships. And state courts have become completely, you know, expert in that level of analysis in determining those rights and remedies. And the federal courts. There's also a will, right, a spillover will? Correct, Your Honor. Yes. But that's really, you know, reading the will is kind of not the story. But the will says everything else to the interest rate. Correct. And so everything, the administration of the estate, that's the trust instrument. That's the instrument that has to be voided and validated, called into question. The will often never sees the light of day because it's not disposing of any assets. People use the trust to avoid probate because of the costs and the fees and delay. Anything else? I just would go back to the sort of more modern authority that trusts are estates, essentially. It's the way modern people plan their estates. And the probate exception says to the courts, you're not to administer estates, broadly defined to include what settlers create to leave their assets among the beneficiary. The probate exception is in great disrepute altogether, as Marshall demonstrates. So if to the degree reaching trust is an extension, maybe we shouldn't do it. I mean, there's not, apparently not terribly. I just think then you're creating a distinction without a real substantive difference. Well, I agree with that. I mean, from what I know about estate planning. But this is all extremely technical stuff. And I joke with colleagues, if that's the case, we're going to have to advise people who create trusts, hey, we may be in federal court. Because if you do a regular probate with letters of testamentary and an inventory and all those accoutrements, then you can't. Don't have to worry about it. You won't end up in federal court in Arizona or whatever. But if you do a living trust, which 90 percent of people in California go to attorneys and do, then you're open to the jurisdiction of the federal court. And that doesn't seem to make substantive sense. It's just a technical difference that's based in sort of the lack of modernity and, you know, bringing precedent forward to meet what the practical way of operation is. Anything else? No, thank you very much, Your Honors. Thank you. Thank you. Thank you. It seems that wills are actually trust substitutes if 90 percent of the people favor trusts. Yes. Yes, the intentional interference cause of action, the probate court has jurisdiction over the matter and can handle it. Therefore, the intentional interference cause of action. Can I ask you a question? Yes. And the question was one that was asked to your friend on the other side, which was do you think this case would benefit from mediation? Oh, by all means. Okay. You would not be opposed to that? Of course not. And one thing I was unclear on, you know, I asked, you know, how much do you want? And, you know, he said I'm entitled to my cost. I wasn't clear whether the cost included fees or not. My attorney said, no, it's just cost. But I'm still not sure. No, it's just cost. And if it's just cost, then I don't know what we're arguing about really. But, you know, I think it's funny you said that word because I have here. I don't know why we are here. I don't know what we're arguing about. Right. Well, as I said, Mr. Janel is quite capable of raising the probate exception initially. And instead he chose to move for change of venue. Maybe he wanted the clock to keep running. He thought that would cause the 120-day rule to be more convincing. But here we are. We're happy to be before our Judge Juarez. I think you mean Mendoza or who? No, Judge Juarez, Los Angeles. And if you ruled in our favor, we would still dismiss because we'd rather be in front of Judge Juarez than Judge Anderson at this stage. The main reason for filing in federal court, not only that I lived in Arizona, is one of the parties is my cousin. She's an attorney of longstanding, happens to be a Judge pro tem who knows all the judges in Superior Court. And I thought that would work against me. And so I thought I was entitled to file under diversity. I didn't hear about the probate exception until after we filed the initial complaint. I didn't hear anything about the whole case, about it applying to the whole case. And then I felt that the dismissal was wrong for a number of reasons, which we really didn't get to, but I don't think we need to. All right. Anything else? No, Your Honor. All right. Any other questions? No, thank you. All right. Thank you. All right. Thank you, Your Honor. And again, this matter of Deutsch versus Deutsch trust will be submitted. Thank you for your arguments today. And I think we will stand in recess. All rise. This court for this session stands adjourned.
judges: BERZON, MENDOZA, Bolton